## Commonwealth v. Seiders

*Merrill W. Kerlin*, for Commonwealth.
*Lawrence C. Zeger*, for defendant.

KELLER, *J.*, January 26, 1981—Kenny Lee Seiders was charged by Trooper Larry R. Good, of the Pennsylvania State Police on April 14, 1980 with knowingly and intentionally having a firearm in his vehicle without a license in violation of section 6106(a) of the Crimes Code of Pennsylvania. A preliminary hearing was held before Justice of the Peace Dorothy S. Brantner on April 17, 1980, and the transcript was sent to court on April 18, 1980. The district attorney's information alleged that defendant "did knowingly and intentionally have a firearm, to wit; Smith & Wesson .357 caliber revolver Model Number 28-2, Serial Number 264807, in his motor vehicle without a license." Defendant waived arraignment and entered a plea of not guilty on May 6, 1980. On June 10, 1980, after a colloquy, the court approved defendant's waiver of

his right to jury trial and election to be tried by a judge without a jury.

On June 11, 1980 defendant was tried without jury. The evidence introduced at the trial can be summarized as follows:

1. On April 12, 1980 at approximately 11:30 p.m., Trooper Jeffrey Tinker of the Pennsylvania State Police observed defendant proceeding west on Lincoln Way in the Borough of McConnellsburg, and that his license plate light was out. He followed him to Fulton Auto Parts, where he stopped.

2. Trooper Tinker asked defendant for his operating papers and he produced them. At that time the trooper observed on the dashboard a stack of hundred dollar bills and a receipt book on the floor of the car in the rear.

3. Believing a drug transaction was taking place or about to take place Trooper Tinker instructed defendant to remain in his vehicle while he went to his cruiser to prepare a faulty equipment card. Trooper Tinker then radioed the State Police Substation for assistance.

4. Troopers Good and Joyce responded to the call in separate vehicles and arrived at the same time at Fulton Auto Parts.

5. Trooper Tinker advised the other officers of what he had observed, and the three troopers then approached defendant's vehicle.

6. As the troopers approached the vehicle defendant got out and told them there was a gun on the floor of the car.

7. Defendant was going to get back into the vehicle, but Trooper Joyce looked in and observed the .357 revolver partially under the driver's side of the front seat; removed it and handed it to Trooper Good.

8. The revolver was not loaded, but seven live cartridges for it were found in the dent in the armrest on the driver's side.

9. Defendant counted the stack of currency on the dashboard, but declined to count the amount of money that was in the "trucker's wallet" also on the dashboard, which appeared to be a substantial sum. He told the officers that it was not so much and represented money that he had saved.

10. The officers observed various objects and clothing in the back of the vehicle, including some reloading equipment.

11. Only the revolver and cartridges were confiscated.

12. Defendant told Trooper Good and the other officers that he had been reloading shells and shooting the revolver in for accuracy at his Uncle Melvin Moats' farm in South Fulton County from 2:30 p.m. until 4:00 p.m. He exhibited a part of a provisional firearm registration slip, and told the officers that he had a current 1979-1980 hunting license, but couldn't locate it despite the fact that he and Trooper Good looked all over the car except in the trunk.

13. Defendant testified that he found the key to his vehicle's trunk later that night in his back pocket, and he found the other half of the provisional firearm registration and his 1979-1980 hunting license in the trunk of the vehicle. The hunting license was presented for the first time at trial as defendant's Exhibit 1.

14. Defendant testified that after he left his uncle's farm at Big Cove Tannery, he went around Little Cove into Franklin County and to Chambersburg looking for a friend. He returned to McConnellsburg about 11:30 p.m. via Route 30; drove past the entrance to his home and the home

of his parents near Reservoir Lane and proceeded west through McConnellsburg, a short distance beyond the borough limits on Old Route 30 to Fulton Auto Parts, where he was stopped by Officer Tinker.

15. Trooper Good advised defendant of his Miranda rights in the front seat of the trooper's cruiser shortly after Trooper Joyce delivered the revolver to him.

16. At no time relevant did the troopers have a search warrant to search the vehicle of defendant.

17. The Commonwealth introduced as an exhibit at trial a report from the Director, Records and Identification Division Pennsylvania State Police indicating that a search of the appropriate records of the Pennsylvania State Police on April 25, 1980 revealed that defendant "has not been issued a license to carry firearms under the provisions of Section 6109 of the Crimes Code," and has been issued a provisional firearms registration permit under the provisions of section 6106(c) of the Crimes Code.

18. Defendant was found guilty of carrying a handgun without a license as required under the Uniform Firearms Act.

On June 20, 1980, defendant filed his motions for a new trial and in arrest of judgment.

Briefs were submitted and oral arguments heard on December 23, 1980. The issues identified and argued by defendant as his post trial motions were:

1. Was defendant excluded by subsections (b)(9) of section 6109 of the Uniform Firearms Act?

2. Did the loading and reloading of shells and shooting-in of a gun come within the term hunting?

3. Could defendant be convicted on evidence obtained by warrantless search of defendant's vehicle

after he had been stopped for having minor faulty vehicular equipment?

All other post trial motions will be deemed abandoned.

Considering first defendant's contention that he cannot be convicted on evidence obtained by a warrantless search of his vehicle when he had been stopped for faulty vehicular equipment. If the facts supported the issue as stated by defendant his position would be correct and his post trial motions for a new trial or in arrest of judgment would have to be granted. However, the facts as presented to the court are that defendant volunteered the information to the three officers that a gun or a hand gun or a pistol was in the car. Trooper Joyce then looked into the car and observed the handgun partially under the front seat on the driver's side. Without any hesitation Trooper Joyce immediately took the gun into his possession and turned it over to Trooper Good.

Under no circumstances do the foregoing facts constitute an unlawful search and seizure. Defendant volunteered the information that the gun was in the car. It was in plain view. The law enforcement officers had the absolute right to secure it for their own protection. Defendant's gun was and remains contraband subject to seizure in the absence of either a license to carry it in the vehicle or meeting one of the exceptions established in the Uniform Firearms Act.

We, therefore, conclude there is no merit to defendant's third contention.

Section 6106 of the Crimes Code provides inter alia:

"(a) Offense defined. — No person shall carry a

firearm in any vehicle or concealed on or about his person, except in his place of abode or fixed place of business, without a license therefor as provided in this subchapter.

"(b) Exceptions.—The provisions of subsection (a) of this section shall not apply to: . . . (9) Persons licensed to hunt or fish in this Commonwealth, if such persons are actually hunting or fishing or going to the places where they desire to hunt or fish or returning from such places. . .

"(c) Registration required in connection with field or stream exemptions.— Before any exemption shall be granted under paragraphs (b)(9) . . . of this section to any person licensed to hunt or fish . . . shall at the time of securing his hunting or fishing license or any time after any such license is issued, register with the county treasurer the make of the firearm he desired to carry, and the caliber and number thereof, on a blank to be furnished by the Pennsylvania State Police. The original registration shall be delivered to the person registering such firearm, and a copy thereof shall be forwarded by the county treasurer to the Commissioner of the Pennsylvania State Police . . ."

We will consider the first and second of defendant's post trial motions together, for in essence defendant contends that reloading of shells and shooting-in his handgun falls within the term of hunting, and since he was licensed to hunt in the Commonwealth and had a provisional firearms registration which permits him to carry a handgun while hunting or going to the place to hunt or returning from such places, he must be excepted from the prohibitation against carrying such a weapon in his vehicle.

We applaud the ingenuity of defendant's counsel in asserting this defense. As a hunter, target shooter and reloader of ammunition this court has

no difficulty in recognizing the direct relationship between the shooting-in of a gun (checking the accuracy of the weapon and its sights) and hunting. Therefore, we accept defendant's thesis that he was engaged in an activity directly related to hunting from 2:30 p.m. until 4:00 p.m. at the farm of his uncle in Big Cove Tannery, Fulton County, Pa.

Had defendant proceeded in a reasonably direct route from the site where he exercised this "facet of hunting privilege" to his home, we would not have found defendant guilty; and had we, we would grant his post trial motions. However, defendant in the case at bar was on the road in two counties for seven hours and a half after he concluded his activities at his uncle's farm. When he returned from the Borough of Chambersburg, he drove directly past the entrance to the drive to his home and his parent's home, and proceeded through the Borough of McConnellsburg and for a short distance beyond its western boundary. In our judgment defendant had lost his right to claim he was engaged in actually hunting or returning from the place where he had legitimately engaged in a hunting related activity.

We, therefore, find no merit in defendant's contention.

## ORDER

Now, January 26, 1981, defendant's post trial motions are dismissed.

The Probation Department of Fulton County is directed to prepare a pre-sentence investigation report and file the same.

Defendant shall appear for sentencing on the call of the district attorney after the completion and filing of the pre-sentence report by the Fulton County Probation Department.

Exceptions are granted defendant.